Thank you, Your Honor. My name is John Trabone. I represent Max Dunlap, an innocent person who was convicted based upon the snitch testimony of Adamson, John Harvey Adamson, one of the biggest criminals in the history of Arizona, in one overt act that was equivocal in nature. I don't know if this Court is familiar with the Zobel letter, but I want to start with the series, the long series of confrontation errors that occurred in this case. Now, those specific, each individual error is subject to review under AEDPA, is it not? Review under what? AEDPA, the Federal Statute of Interest. Oh, yes, absolutely. Okay. So we have to vary deferential standard of review, which is what the district court did. And so we look at the State court decision under that, with that lens in mind, don't we? No question about it. The starting point is that you look at the last recent State court decision. That's the Arizona Court of Appeals in this case. But as a series of cases, both from this Court and from the United States Supreme Court, show, starting with Miller L. And two decisions, by the way, that I've noted that you were on the panel in, so I think you're probably expert in this area, Taylor v. Maddox and Collins v. Rice. This Court has repeatedly held, as has the Supreme Court, if the State court ignores significant evidence on the issue, then it is necessarily an unreasonable determination of fact under 2254d of the ADPA. And in this case, consider the unbelievable evidence that was ignored by the State court. First of all, regarding the Zobel Act. Court, what does ignore mean in your view? Ignored, as this Court has amplified in those decisions on which Judge Nelson sat, means that there was important evidence in the record that goes contrary to the holding or reasoning of the State court decision. That evidence was not discussed in the decision. That is ignored. As this Court has repeatedly found, judges are like juries. They cannot simply ignore the evidence that's presented before them. If they reach a certain proposition, they must at least analyze and discuss the evidence that goes the other way. In this case, the Court of Appeals did not do that. Tab 3 in the excerpt of record is the key few pages of documents that should be looked at. What happened? John Harvey Adamson's on direct examination. He is cross-examined, thoroughly impeached, all the courts below found, about the fact that he's a criminal, that he's committed arsons, that he's committed all these other crimes. Never within the realm of that cross-examination does the defense have anything to show that he is a liar. I submit to you that if I was a senior partner in a law firm back in the days, if you can remember those, when you were a trial lawyer and said, here is a letter that he wrote to his wife, what do you think you could do with it on cross-examination? You would be drooling from that day forward until the trial date. That letter is an unbelievable source of impeachment, and you and I both know it. I've never been doing this my whole life since I've been about 13, it seems like, anymore. I've never had a letter like that Zobel letter as one source of impeachment against another witness. In that letter, he tells his wife, number one, I'm open for money. I'm going to get 25 percent kickback from the investigator who's working on this case. We can steer this case to where we want it to go. I may not be a very good witness. I may not be believable. I may change my testimony depending on who pays, number one. My inflections and my body mannerisms may be different. I may be able to mislead the jury. All of that evidence was completely precluded from this trial. But we know what's the test. The test is you must consider the excluded evidence when realized to its full potential on cross-examination. And I suppose that would be an in- What does he rely upon for that standard? That standard is from Delaware v. Van Arnstel, United States Supreme Court, 1988, 475 U.S. 673. From this Court, United States v. Schoenenberg, that was decided November 17th of last year. From Cato v. Herbert, a case that was decided in the Second Circuit, I believe. So a series of cases. But isn't the fact that the Arizona Court of Appeals found that there was an error, but held it was harmless? Exactly. So what you're saying, that it ignored some evidence in the harmlessness decision? Absolutely. So what did it ignore? It ignored the cross-examination of Adamson with the Zobel letter at the Robeson trial, the co-defendant's trial, which was made part of the record before the Arizona Court of Appeals, part of the record before this Court as well. It's in tab 3 of the executive record. So in your view, that if the Arizona Court of Appeals did not specifically discuss that evidence, it ignored it? Yes. Okay. And two panels that you've been on said the same thing. I'm sure we're right then. Please have a stipulation for me on that point. The point is, the letter was a dynamite letter. It just was. There's no way that you can read that letter and conclude otherwise. He was going to lie. There was nowhere. Now, Judge Winfield below found Locascio had been thoroughly impeached. That's what the Court of Appeals said. He'd been thoroughly impeached, but not with mendacity. And look at Fred Newton's arguments, in closing argument. They're cited in the reply brief. He essentially argued that this guy's an honest crook. He's been misunderstood by prosecution teams. He's really just an honest guy that committed a lot of crimes. There's honor among thieves. That was his closing argument. If that Zobel letter had been in, it wouldn't have been done that way. In fact, in Schoenenberg, a case where this Court recently decided the fact that someone's going to get a reduction of sentence under Rule 35 and a plea agreement was admitted wasn't good enough, according to this Court. You have to allow full cross-examination concerning that. A lot of cross-examination was allowed in Schoenenberg. That wasn't enough, according to this Court. You must allow full cross-examination. But that wasn't a case under ITPA, though. That's the difference. No. That wasn't a habeas case. But it shows, ever since Davis v. Alaska in 1974, the Supreme Court has repeatedly held, as this Court and every other court in the country, that full cross-examination, especially of accomplice testimony, must be allowed. And what was precluded here? The golden jewel. Now, the other thing that every court below has ignored, I hope you won't, is the Henze affidavit. On the motion to vacate judgment before the trial court, without objection, Judge Hall said, I don't want Mr. Henze to come take the stand. You give me an affidavit. An affidavit was drafted and submitted that day to the judge, admitted without objection by the State. And what's Henze say? These cases, of course, were severed before trial, but they were co-defendants in the same case. It was the single most important impeachment evidence that I had. The single most impeachment evidence that I had. It was the difference in the two trials, according to Henze. He's a specialist in criminal law. He tried the case. How could this Court find otherwise? Look at that cross-examination. Here we have the beauty of, you don't have to imagine how Adamson would have handled that letter in cross-examination. You know how he handled it. You're a powerful jury argument. I can hear that. And I'm not happy with what Congress did in 1996. But they really cut back on our jurisdiction on collateral attack. And that's the problem. That is your big, high mountain you have to climb. Luckily, this is one of those extreme cases where we can run up that mountain. And I'll say I'm aware of Judge Rawlinson's opinion in Medina, her dissent in Gill v. Ayers. None of those cases come close to what occurred in this case. The most explosive impeachment evidence available to the defense was precluded. We know this is a snitch case in which accomplished testimony was 99 percent of the case against Max Dunlap. And the most important evidence was precluded? And it's not even discussed? They mention the letter. They don't even mention the whole letter. But they don't in this record. Existed his actual answers to those questions. And what did he do? Every time Hensley tried to question him about the letter, oh, did I say that? Oh, I didn't know I said that. He choked on his own words. Read those answers. He choked on his own words before that jury. He mentioned, oh, who's Ned, Mr. Adamson? Oh, I don't know who Ned could be. We testified later in the same trial. Ned Warren was the person who told him, I want you to kill three people for me. We understand that, but the Arizona court also understood it. They didn't discuss it. Well, they ruled on it. They did not discuss his answers. And the focus is what effect the excluded evidence would have had on the jury if the damaging potential of the cross-examination was fully realized. In this case, we know how it would be fully realized. It's not discussed by the Arizona court of appeals. It's simply not. But you're right. What do we have in this case? Admitted confrontation errors. I don't have to argue about that. The only thing that we have to argue about is whether or not it's error, whether or not it's harmless beyond a reasonable doubt. And, you know, when you consider that, you should consider ever since Davis v. Alaska, what's the Supreme Court repeatedly said? It's not for judges to decide, not the court of appeals in Arizona to decide what would be harmful. The focus is give it to the jury. Mass Denial Act has a Sixth Amendment right for that jury to gauge that, not for judges to do it. So close scrutiny must be given by this Court, especially when they don't discuss critical evidence. What about the Hinsey affidavit? I know that. Can I divert you to a different mountain? Please. Let's assume that you fall off the mountains you've chosen to climb here. Okay. And let's move to a different mountain. Okay. Because you probably got to get over the whole range before you get home. Let's talk about cumulative error. Okay. Now, would you agree that that claim was procedurally defaulted? No. Not raised in the State court? I don't think it's a separate claim, Judge Nelson. If you're talking about error, especially error, let's say, let's divide cumulative error in two categories here. When you consider confrontation error, don't you have to consider all that error together, at least error of the same kind? Maybe jury instruction error and confrontation error being combined is a different claim. But if you're talking about error based on confrontation, cumulative error is necessarily included. And the Supreme Court cases don't make a distinction. Whenever they talk about Strickland errors in effective assistance of counsel, which they, in Wiggins and other cases cited in our briefs, every time they've done it, they've talked about what counsel did. Not piecemeal, they say, but what he did collectively. Well, okay. But I guess maybe it's the rigid way we have to approach habeas these days. But it's divided into claims. And you look at each claim and you say there's error or there isn't error. If there's error, it's harmless or it isn't harmless. And then you look at collectively and you say, now, looking at all those, were those errors, was the effect cumulative looking at the errors? Was there a reversible or a, let's say, an error on which you can grant relief cumulatively? Now, that cumulatively was not raised in the state court, was it? I mean, the confrontation that was divided into several pieces in different claims, and those were admittedly raised. But did the Petitioner and state court say, looking at all these errors we've raised, that's cumulative and we're entitled to relief? Well, I'd have to go back and read Kevin McNally's brief, to be honest. It's in the excerpt of record. But I believe he argued it, but not as a separate claim. Okay. I believe he argued cumulative error, but not as a separate claim. Clearly, the Arizona Court of Appeals, we're not in California, did not address cumulative error in that sense in its decision. Not as a separate issue. So to the extent that it's a separate issue, then it was procedurally defaulted. I don't agree that it was procedurally defaulted. I don't think you have to argue every little nuance. I think you're fighting, I think you're fighting the question, because if you divide the case into claims, which you have to do for purposes of analysis, and the court says, okay, look at all those errors, do they add up to relief? That's a separate claim. So that was not raised separately, yes or no? Well, no to the last question, but I disagree with the premise, because it doesn't It isn't a separate claim if you're talking about confrontation error. If you're talking about combining one branch of error to another branch of error Okay. Well, let me put it to you this way. If we look at the numbered claims that have been raised, and we look at what the Arizona Court of Appeals did and what the district court did, and we say under AEDPA the district court cannot grant any relief on any of those claims, then that ends the discussion. Is that correct? No. I think you'd have to consider at least the confrontation errors cumulatively. But if I may, for a moment, we're just going to disagree on that point. I don't want to give that away here. No, I'm not asking you to give it away. What I'm asking you is to go with me to the point where you agree that a separate claim of cumulative error was not raised in the state court. If you find that it has to be explicitly raised as an independent separate issue, then I would concede the point. Okay. I don't believe it does. I'm not sure that you're dead in front of the oncoming truck if you agree with me. Okay. I'll agree if I'm not dead. Okay. Now, agree with me that they're dead. Bring me back to life. Watch that truck. It's got a big sign that says Kenworth on the front. You want to stay away from under the Kenworth. All right. Now, if the state court did not decide a separate cumulative error claim, then can AEDPA apply to a current claim of cumulative error in the sense in which I've mentioned it? Yes, at least if you're considering confrontation error alone. I mean, combined. But how can that apply if there's no reason, state court decision, to which you can apply it? Because I suppose it just seems nonsensical to, let's say a lawyer committed ineffective assistance at counsel throughout the trial, or a prosecutor may engage in misconduct during closing statement, but he made five statements during closing statement that were objectionable instead of one. Would you consider each of those separately and say each of those have and then you might It might depends on how it's brought up. But what I'm trying to get to is whether we can now look at cumulative error in the sense in which I've raised it without going through the AEDPA lens. That's what I'm trying to get you to address. And I believe you can. I think the United States Supreme Court has done it without it ever being a separate claim in front of them and all the Strickland cases that they've decided. Of course, the Strickland cases, AEDPA, yes, AEDPA, no, depending on timing. Well, I think it's just the same philosophy, though. But would you agree then that the State has waived the procedural default by not raising it in the district court, assuming there was one on cumulative error? The State. The State, here, in this case, has waived the procedural default defense. Yes. Okay. Now, we're there. And we've got cumulative error in front of us. And we can look at it in the sense that I'm using it, look at all the claims and say, now, do they add up to an error on which we can grant relief, and look at it and say, we can do that without reference to AEDPA, yes or no. Yes, you can do that. Okay. You know, I only have a few minutes left. Hopefully you're going to add. Can we add another ten minutes? I'm slow. Maybe because of those other submissions, we can add another 20 minutes or so for this case. It's an intriguing case. There's a lot more to talk about. We're not adding it. We're not adding. So I want to save at least two and a half minutes. So let me just say, besides the Adamson cross-examination, the Harrell-Bone testimony is unbelievable that that would come in. I guess with friends like that, you don't need enemies. The State's argument with his bias was in favor of Max Dunlap. He killed Max Dunlap. He said that Max Dunlap was making the money drop to help Neal Roberts out. That would make Max Dunlap a liar. The State relied upon that in closing argument. The Rosalie Bowles confrontation here. All these are admitted confrontation errors. There's no question there. It's just whether or not it doesn't matter. Rosalie Bowles is unbelievable. Bernie Wynne had been thoroughly impeached. He admitted his memory was no good. He admitted he was contradicted by Governor Castro, the former governor of Arizona, on the witness stand. He's the only other person that says that Don Bowles was working on Kemper Marley and Sam Steiger rather than M. Price and the Mafia and the Funk family. Well, my gosh, we know that the jury would have considered the slain reporter's wife's testimony, her statement, to be considerable. All of those, independently Judge Nelson, are worthy of reversal. All of them are. You couldn't stand in front of a jury and say, throw this out and it wouldn't matter. We all know as trial lawyers we would that would be unbelievable evidence. And it is in this case. The confrontation errors are unbelievable here, the string of them, separately or combined. I want to save minute 31. Thank you.  GOTTLIEB All right. Thank you, counsel. MS. MAZZIARS May it please the Court, my name is Joe Mazziars. I'm an assistant Arizona attorney general representing respondents in this action. In my argument this morning, I plan to touch upon three of the confrontation clause claims raised by Petitioner, those being the Zobel letter, the Harold Boland grand jury testimony, and the Rosalie Bowles statement. The first point I'd like to make is that there are clearly four and distinct confrontation clause claims raised by Petitioner. They the three I mentioned and then as well as the statements of Robeson that were admitted as statements of co-conspirator. Now, the United States Supreme Court has never recognized a cumulative error doctrine. More importantly, if we had confrontation clause claims pertaining to one witness in this case, John Adamson, if all these confrontation clause claims went to that one witness, that would be a compelling assertion that then you would look at the cumulative effect. But here we have four separate witnesses or statements. So to the extent Petitioner is claiming any kind of cumulative error doctrine regarding confrontation clause, it's simply not cognizable under the ADPA. Furthermore, and this relates to some of the questions Judge Nelson asked, Petitioner did not raise this claim in the State court. Moreover, he didn't raise it as a freestanding claim in the district court. What he did was in arguing each of those confrontation clause claims, he kind of said, well, if you consider this along with that, it clearly shows substantial prejudice. But he never raised it as a freestanding substantive claim. Ginsburg. But did the State ever say you didn't raise cumulative error, so now you're precluded from raising it in district court? The State simply never addressed the issue because it wasn't raised as a specified claim. In district court? In district court. If you look at our answer, we responded to each substantive claim. And we addressed, I believe it was Brecht in those situations where there was a harmless error argument. But we never specifically addressed the cumulative error. So your position is that cumulative error was not even raised in district court? Not as a substantive claim. Now, the district court, both the magistrate and the judge, garnered that from his argument and did address that and simply said, well, even if we look at this altogether, there's nothing that would warrant granting the writ. But more importantly, again, the United States Supreme Court has never held that a doctrine of cumulative error, particularly when you consider alleged errors pertaining to separate witnesses, is a cognizable claim. And under the AEDPA, unless the Supreme Court has specifically so held, you simply can't grant relief on that basis. So your position is that we have to look at each independent claim of error and we never look at them in the aggregate? No. Is your answer yes? Yes. An example of where you would would be a claim of prosecutorial misconduct, for example, because we know there's no such constitutional claim. But under the Fourteenth Amendment, the Supreme Court has told us in Donnelly v. DeCristofo and other cases that you look at the cumulative effect of the prosecutor's alleged misconduct to determine whether the defendant's due process rights have been violated. That's not true when you have independent confrontation clause claims. I'd like to first discuss the Zolder letter. Let's stay where you are for a moment. Sure. I asked your opponent if the State had waived the cumulative error argument, and he said yes. As I get your statement, you're saying, no, the State didn't waive it. Correct. Because it couldn't detect a cumulative error argument in the filings to which it responded. Correct. It wasn't raised, as I recall, as a specific freestanding allegation. It was discussed – when he would discuss the individual confrontation claims, not only those, the other claims, he would say if you add all this together, I was denied my constitutional rights and the writ should issue. But, again, aside from procedural default, the first issue you need to address is whether such a claim is cognizable under the AEDPA. And unless there's a specific Supreme Court decision so holding, your hands are tied, quite frankly. But let's stay with that, then. If the Arizona Court of Appeals did not address a freestanding claim of cumulative error, because it wasn't raised there either as an identifiable claim, then how can you look for some Supreme Court decision on an opinion that didn't address it? Because they didn't ever address it. In other words, you can't look for some Supreme Court decision on an opinion that didn't address it. Well, I agree. You'd be hard-pressed to determine whether there's an unreasonable application of Supreme Court precedent if the Court didn't address the claim. Of course, here not only do we have the court of appeals not addressing the claim because it was never presented, we have no clearly established law as dictated by the Supreme Court recognizing such a claim. But don't we look at the record de novo, then, to see whether or not there's a constitutional Right. You would if the United States Supreme Court had recognized such a claim and if the State had waived procedural default, which we've asserted there's no such rule by the Supreme Court, and we didn't waive default because it wasn't raised as a freestanding claim. So your argument go ahead. Well, it seems to me if AEDPA does not apply, then that whole framework is not there. And wouldn't we simply look at what the district court did in the light of general law, Ninth Circuit law, California law, Arizona law, whatever it is, without regard to AEDPA? Absolutely not, because you can only grant the writ based on a violation of Federal constitutional law as announced by the United States Supreme Court case law. You can't grant the writ based on Ninth Circuit law or any other Federal law not announced by the United States Supreme Court. Now, what case authority are you relying upon to support your argument that if the State court does not rule on the issue and we look at it with a fresh eye, that we're limited to United States Supreme Court authority? This Court's case in Alvarado v. Hill, the Supreme Court's case, I believe, in Locklear v. Andrade. Now, again, maybe there's two separate issues here that we're confusing. I would agree that if the State had the issue had been presented in the district court, the State didn't argue procedural default, and there was an underlying Federal claim, this Court couldn't apply the AEDPA to the State court's resolution of that claim, because there wouldn't be any. And in that instance, this Court can conduct a de novo review. But there has to be a Supreme Court holding that guarantees that right. And with this cumulative error doctrine, there simply isn't any. And that's the fallacy with the case in Alvarado. And you're saying Alvarado v. Hill and Locklear v. Andrade both say that, that when we're looking at it de novo, that we have to rely on a Supreme Court decision? They don't say when you're looking at it de novo. They simply say to grant the writ. There has to be Supreme Court precedent on point that grants the right that was violated. I understand that. But that's usually when we are determining under either the contrary to or unreasonable application of Supreme Court authority. That's not what we're talking about here. We're talking about when there has been no ruling by the State court at all. So what case do you have that addresses that situation? I can't think of any off the top of my head. But again, the whole premise is the writ cannot issue but for a violation of Federal law as dictated by the Supreme Court. And if there's no Supreme Court precedent on point, regardless of whether the State court addressed that issue or not, the writ can't issue. You can't review the claim because you'd effectively be expanding law beyond what our Supreme Court has dictated. I'd like to first discuss the Zobel letter. Now, the Arizona Court of Appeals found that the Petitioner's Confrontation Clause rights were violated because the trial court, finding that the letter wasn't particularly material or probative, precluded defense counsel from reading certain cross-examination of John Adamson. I would point out that the major portion of the letter, wherein Adamson indicates that he'd be willing to color his testimony if the price were right, was in fact read into the record on redirect by the prosecutor. And that's a little different than being able to, on cross-examination, hit someone with his own words. Wouldn't you agree? I agree. Hence, we have a Confrontation Clause violation. If that weren't true, there wouldn't be a Confrontation Clause violation. Exactly. So I'm not sure that necessarily purges the error. No, it doesn't purge it. It softens the blow, so to speak, because part of the letter that was written is the final one. But what ultimately determines any individual's involvement in subsequent guilt or innocence is the jury itself. There is where the variable is housed. Whether I will be an excellent, believable witness with no mistakes or would the possibility of my making an honest, nervous mistake on the stand interest some of the individuals involved, that was read to the jurors. So they had that information before them. Admittedly, his Confrontation Clause rights were violated because the portion right before and the portion right after, when counsel wanted to read those, the Court said no. Now, the portion right before that is simply Adamson speculating that Playboy magazine might be interested in his story for a price. And it's not only this case. He implicated several people in several different crimes. And also bear in mind this was within a few months of when Adamson was arrested. He hadn't entered any kind of agreement and Dunlap hadn't been charged. So that beginning portion really doesn't add anything to the impeachment value. The portion right after that simply verifies the portion I just read and clarifies that for a price he might be willing to shade his testimony, but it would be to benefit other individuals, such as Dunlap. Not to lie to implicate them, but just the opposite. It would actually he might be willing to, like I said, testify in such a manner that it might benefit other individuals. Admittedly, we have a Confrontation Clause violation. The Arizona court of appeals so found. But their application of Chapman, the Chapman standard, to the facts of this case are eminently reasonable. Now, in addition to the fact that the main impeaching portion of the letter was, in fact, read, the court of appeals pointed out that Adamson himself, and he was, I might add, he was cross-examined for about two and a half days. And his credibility was thoroughly impeached. He admitted that he had lied to both State and Federal investigators. He admitted lying when it served his purposes. And he admitted committing numerous crimes, including several bombings, numerous insurance frauds, and more than 40 burglaries. He was cross-examined for two and a half days. He was cross-examined with other letters he wrote that were worse, that were then impeached worse than this letter, including one letter to his wife where he claimed I'm not involved in this at all, and given enough time and resources, I can prove it. I mean, that to me is devastating. He's saying that this is all a sham. And he was cross-examined with that letter. He acknowledged writing it and just said, you know, it wasn't true. And, Counsel, don't you think it's pretty powerful evidence that in the case of the co-defendant where the letter was used, the co-defendant was acquitted? No, not at all. And there's a few reasons. One is we have two separate trials. Two, Robeson is tied in by Adamson and Adamson solely, other than the payments that go on afterwards between Dunlap and Robeson for Robeson's silence, which is the conspiracy to obstruct justice count. But Adamson is the linchpin to Robeson. That's not true with Dunlap. Dunlap implicated himself in so many ways. I mean, he delivers the $5,800 payment to Adamson less than a week after the bombing. He gets $5,000 the day before from Kemper Marley. He lies to the investigator sellers about the delivery. First, doesn't say anything about it at all. When evidence is developed through the receptionist at the attorney's office, he acknowledges, oh, yeah, I did deliver the money, but he claims, doesn't say anything about Adamson being there. Later on, when it's shown that he didn't meet with Adamson, he said, okay, Adamson was there, but I didn't talk to him. Then later on, when it's proven that he had met behind closed doors for 15 minutes, he said, okay, I talked to him for 10 minutes. All of Dunlap's actions corroborated Adamson's testimony. The jurors were well aware of the fact that he was an accomplished liar and he was a career criminal. They believed him to the extent it implicated Dunlap, but only where there was independent evidence to corroborate that. That's not true in Robeson. In Robeson's case, hung or fell based really solely on Adamson's testimony, in many instances totally uncorroborated in that case. Again, it's always dangerous to try and say why did we have a result in one trial and another trial, because we have different jurors, different evidence. But I think that, when you look at just the facts of this case, it's pretty clear that Adamson is the sole link to Robeson, not true with Dunlap. Could I take you back to the Kenworth for a minute? The excuse me? The Kenworth that your opposing counsel was lying on the road in front of during his argument? Sure. Let's see if you can jump out of the way. You said that even if there was no State court adjudication, you still need a Supreme Court decision in order to grant relief. I'm paraphrasing. A Supreme Court decision recognizing a constitutional right. Right. Okay. So that intrigued me, so I went back to the source. In Reading 2254d, which is where we get into AEDPA, An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceeding unless the adjudication of the claim resulted in a decision that was contrary to a Supreme Court decision or resulted in a decision based on an unreasonable determination of the fact. So where do you get a stand-alone requirement that there has to be a Supreme Court decision before you can grant relief? Right in that language. And the exception to that language is what the Court is talking about, where the State court fails to address the issue. Then you don't you can't apply the unreasonableness gloss because it hasn't been addressed, but it has to be Federal law as determined Federal constitutional law as determined by the Supreme Court. That's that's the basis for granting the writ. The only reason you wouldn't apply the unreasonableness language is if the State court didn't address the claim. But this is all tied to a State court decision. In other words, the Supreme Court decision, the requirement that it has to be a Supreme Court decision and not a court of appeals decision comes in the basis, in the context of an adjudication by a State court. So in the absence of an adjudication by a State court, why do you have to get that tie? Well, because I may be a little confused, but unless you have a Supreme Court precedent announcing a Federal right, there's just no basis to grant the writ. Now, that language, this Court has held and I think other circuit courts have held that if the State court doesn't address the claim, then the unreasonableness part of that can't be applied. But the fact that the Supreme Court precedent announcing the rule has to exist to grant the writ. What case says that? You know, I believe there are several. I hadn't foreseen the specific area of inquiry, so off the top of my head, I can't tell you a case where we have exactly this scenario. But there are many U.S. Supreme Court cases and cases from this circuit that say the writ cannot issue unless there's a Supreme Court precedent that recognizes a specific constitutional right. I'm not familiar with any in the context where the State court has not resolved the issue and we're looking at it unencumbered by a State court ruling. Again, all I can tell you is unless there's a violation of Federal constitutional laws announced by the Supreme Court, the writ cannot issue. I believe there are probably cases right on point dealing with this situation, but I don't know. But prior to AEDPA, that wasn't true. No, no. And this circuit would often, including cumulative error, would reverse convictions based on law of the circuit. You know, and AEDPA, part of the rationale for that was, you know, we don't want a State court ruling. That was the impetus for AEDPA, so that Federal courts would not usurp State rulings. And if we don't have a State ruling, then the principle upon which AEDPA is embedded doesn't exist. Well, but then you're not recognizing the other facet of it, which is you only grant the writ for a violation of Federal constitutional rights as announced by the Supreme Court. Those are two separate and co-equal and compelling reasons for the AEDPA, not solely the unreasonableness, but also that the kind of ---- No, I don't think you're getting what I'm saying. I'm saying it's anchored to a State court ruling. If you don't have the State court ruling, then you don't have the concern that Well, if that were true, then if the State court didn't address it, this Court could never issue the writ, even if the issue were presented. And I'm saying that that's not true. We agree if the State court didn't address it, you wouldn't apply the unreasonableness, but you need the other prong. You need the constitutional right as announced by the Supreme Court. If the defendant had raised that claim below, say, a Confrontation Clause claim, and it wasn't addressed on appeal or in district court, you couldn't apply the reasonableness standard to that Confrontation Clause claim, but you could certainly say we have Supreme Court precedent right on point that says there's a right to confrontation, therefore, we address it. No. My second precedent can also establish a constitutional infraction. Not for purposes of the AEDPA, it cannot. I see my time is running out. I believe the brief pretty much covers the remaining two issues. Now, the first one remark I'd like to make on the Harold Boone grand jury testimony is the first we've argued why the Arizona Court of Appeals finding, alternative finding of harmless error is a reasonable application of Chapman. But obviously, the first issue this Court would have to grapple with is whether Crawford announces a new rule, and if it does, whether it falls within the exception to Teague. I know there's a case from this Court recently, Botkin, a 1-1-1 decision. It's pending rehearing on Bonk. I pointed out that two circuits have held that Crawford announces a new rule and it's not retroactively applicable. Since then, I was conducting some research the other day, three more circuits have joined the other two. So right now, it's a five circuit to this Court's, what I refer to as the three-headed monster in Botkin. And in the event this Court believes there's any trouble with the alternative harmless error argument, I would ask that the Court await the on Bonk decision in Botkin. Unless the Court has any questions, I see my time has expired. Thank you, counsel. Rebuttal. In Brecht, the case that decided the new standard for harmless error on habeas review, 537 U.S. 638 at note 9, the Supreme Court expressly considered the cumulative value of prosecutor misconduct. It didn't consider it piecemeal. So in the landmark case that changed the standard of review, the Supreme Court did it. So there's a series of cases. Vincent v. Seibold in the Sixth Circuit. Separate confrontation violations must be considered together. Separate confrontation. The same thing here. And that is a 2000 case. So it's an EDPA case as well. It just defies common sense to say that you look at isolated things when you know the picture together adds up. But each confrontation here is enough to climb that mountain. And we can see how Harold Bone becomes important because the State says, well, gosh, that's what makes a difference between this trial and the Robeson trial, is Max did this one act that was equivocal. Harold Bone provided the key testimony on that against Max Dunlap. He wasn't cross-examined. And the Arizona court applied the wrong standard. It looked at Conlin and Marcini from this court, which did not apply the intrinsic trustworthiness test or the presumption of unreliability in Idaho v. Wright. So they applied the wrong standard there. I want to emphasize, we don't have to worry about this EDPA stuff. Really, once there's a reasonable determination of fact by the State court, you're under de novo review anyway. And there was, certainly regarding the Zobel letter, which is more than enough to reverse this case under the EDPA standards. There was an unreasonable determination of fact. And as a result, once that's done, you have to take a look at the record independently anyway and come to a legal conclusion based upon Supreme Court precedent. But the Supreme Court precedent has been clear since Davis v. Alaska in 1974. Regarding the use of the letter on recross, the government's counsel argued, well, gosh. Redirect to me. I'm sorry. Redirect. Thank you. Part of that letter was read. Well, look at Beechcraft Corporation v. Rainey, what the Supreme Court thought of that. Clear applied law. You must be allowed under Rule 6106 not only to get the rest of the letter in, but then to cross-examine the witness about it. Fred Newton was able to get the part in that he thought made Adamson look truthful when the rest of the letter showed he was hatching a plan to lie and make money not generally in this particular case. Okay, counsel. We understand your argument. You've exceeded your time. Thank you to both counsel for your argument. The case just argued is submitted for decision, and we are recessed until 9 a.m. tomorrow morning. Thank you. Thank you. Thank you. None of these goes into the wounds, do they? The cases that were submitted... Go in there. She's got the meds. Okay, we have the meds. Okay, the other ones that she heard. We take that.
judges: Reavley, T.G. Nelson, Rawlinson